Argued April 13, affirmed May 18, 1920.

## COATES v. MARION COUNTY.

(189 Pac. 903.)

**Death—Statute Makes County Liable for Death from Defective Highway Bridge; "Pari Materia."**

1. Section 6375, L. O. L., giving right of action against county to one injured by defective highway or bridge thereon, being a legal county road, with the earlier statute, Section 380, giving right of action for death where, had the person lived, he might have maintained an action for injury done by the same wrongful act or omission, gives right of action for death from such a defective bridge; the statutes being in *pari materia,* that is, relating to the same thing or subject, though enacted at different times.

**Bridges—Point of Accident, Relative to Liability of County, for Jury.**

2. The question, relative to liability of county for death from a defect in a bridge, whether the point of the accident, not in dispute, was outside the corporate limits of a city, is for the jury on conflicting testimony, notwithstanding a civil engineer, who made a survey, testified on one side.

Bridges—Evidence of Other Accidents at Same Place Competent on Question of it Being Dangerous.

3.   Evidence of other accidents having occurred at the same place on a highway bridge is competent on the question of the place being dangerous.

Evidence—That Auto has Current Number-plate Evidence of Compliance with Motor Vehicle Law.

4.   The motor vehicle law providing for number-plate being attached to a car as evidence that the law has been complied with, evidence of a car being so equipped with a plate for the current year is admissible without other evidence of a license being issued.

Bridges—Repairing by County Officials Admissible to Show County, and not City, Liable.

5.   On the disputed question of whether the point on a bridge where an accident occurred was within the corporate limits of a city, or in the other part of the county, as plaintiff contended, the conduct of the county officers in repairing it could be considered by the jury.

Trial—Requested Instruction not Based on Evidence Properly Refused.

6.   A requested instruction that, if one when injured was traveling on the left side of the street, he was traveling unlawfully, is properly refused; there being no testimony on which to base it.

Trial—Refusal of Instructions Covered by Those Given Proper.

7.   It is not error to refuse requested instructions which are fully covered by instructions given.

Evidence—Presumption That Law has Been Obeyed Prevents Nonsuit and Directed Verdict.

8.   The statutory disputable presumption, declared by Section 799, subdivision 34, L. O. L., that the law has been obeyed, is, by provision of Section 793, evidence, and so prevents nonsuit and directed verdict.

From Linn: PERCY R. KELLY, Judge.

Department 1.

Plaintiff is the administratrix of the estate of F. L. Coates, deceased, who died from the effect of injuries received in an accident occurring at a bridge near the northern boundary of the town of Jefferson, in Marion County. He was riding in an automobile which, upon entering the bridge, swerved to one side, broke through the guard-rail, and fell into the ravine below. It is alleged that the bridge is upon and part of a legally established county road

known as the "Pacific Highway," and that the accident was caused by the negligence of the defendant. The specific acts of negligence charged are: (a) That defendant had permitted it to become badly cut up with ruts and depressions making it unsafe for travel; (b) that the bridge was permitted to fall into a condition of decay, and had a false decking formed by laying timbers lengthwise thereon for a width of 8 feet and a length of 85 feet, leaving the under-decking exposed for a distance of 4 feet on each side, and so placed that the false decking was 3 inches higher than the exposed under-decking, and therefore unsafe; (c) that the road is 60 feet wide, and the bridge 16 feet wide, and not in line with the regularly traveled track of the highway, and without safe guard-rails on the sides; (d) that the bridge was from 3 to 6 feet below the grade of the roadway leading thereto, so that a person approaching the bridge in a motor-car, at a reasonable speed, is unable to discover the ruts and the defects in the bridge before coming in contact with them; (e) that at a point adjacent to the bridge at the south approach thereof, there was a rut 12 inches deep extending entirely across the road. The deceased, while driving a motor vehicle on the road described ran the same into this rut, and against the "upraise" caused by the false decking on the bridge, which threw the car out of its course, and caused it to plunge through the side-rail, into the ravine below, injuring the decedent so that he died within a day or two thereafter.

Defendant answered, denying the material allegations of the complaint, and there was a trial, resulting in a verdict and judgment for plaintiff from which defendant appeals.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Max Gehlhar,* District Attorney, and *Mr. James G. Heltzel,* Deputy District Attorney, with an oral argument by *Mr. Gehlhar.*

For respondent there was a brief over the name of *Messrs. Weatherford & Wyatt,* with an oral argument by *Mr. J. R. Wyatt.*

BENSON, J.—1. At the beginning of the trial, the defendant objected to the admission of any evidence in support of plaintiff's case upon the ground that in this state no right of action exists upon a state of facts such as are set out in the complaint. Defendant argues that no action can be maintained against a county under such circumstances, unless expressly permitted by statute; a doctrine which is justified by the holding of this court in *Templeton* v. *Linn County,* 22 Or. 313 (29 Pac. 795, 15 L. R. A. 730). Shortly after that decision was handed down, the legislature, in 1893, passed an act which is now Section 6375, L. O. L., which reads as follows:

"Whenever any individual, while lawfully traveling upon any highway of this state or bridge upon such highway, the same being a legal county road, shall, without contributory negligence on his part, and without knowledge upon his part of the defect or danger, sustain any loss, damage, or injury in consequence of the defective and dangerous character of such highway or bridge, either to his person or property, he shall be entitled to recover of the county in which such loss, damage, or injury occurred, compensatory damages, not to exceed the sum of $2,000 in any case by an action in the Circuit Court of such county, or in a Justice's Court therein, if the amount of damages sued for shall not exceed the sum of $250."

It is argued that statutes of this character are to be strictly construed, and that, since the act expressly provides only for a recovery by the party injured, and is silent upon the subject of the recovery of damages for the death of a person, this action cannot be maintained thereunder. It must be conceded that if we were confined exclusively to the statute quoted for a right of action such contention would necessarily prevail. However, the plaintiff directs our attention to Section 380, L. O. L., which contains the following language:

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission."

This law was enacted in 1862, and had never been repealed. Plaintiff urges that the two acts are in *pari materia* and must be construed together. In the consideration of this question, it may be observed that the two sections are not in any way conflicting or inconsistent, and therefore, the subject of a repeal by implication is not involved. Are the two statutes in *pari materia?* In *United Society* v. *Eagle Bank,* 7 Conn. 456, 468, such laws are defined thus:

"Statutes are in *pari materia,* which relate to the same person or thing, or to the same class of persons or things. The word *'par'* must not be confounded with the term *'similis.'* It is used in opposition to it, as in the expression *'magis pares sunt quam similes,'* intimating not likeness merely, but identity. It is a phrase applicable to the public statutes or general laws, made at different times, and in reference to the same subject.

"All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also in connection with other statutes on the same subject": 36 Cyc. 1146.

"Statutes which relate to the same thing or to the same subject are in *pari materia,* although they were enacted at different times": 25 R. C. L. 1067.

With these legal principles in mind, let us consider the statutes here involved. The earlier one provided that if the decedent, surviving an accident, would have had a right of action for injuries resulting from the negligence of another, his personal representatives may maintain an action for the death brought about by the same act of negligence. Later, with this statute in mind, the legislature enacted Section 6375, which expressly gives the injured party a right of action against a county for injuries resulting from a defective highway, and thus brings a death, resulting from such injuries, within the purview of Section 380. We conclude, therefore, that defendant's position is not well taken, and was properly disregarded by the trial court.

2. Assignments of error numbered 4 and 5 challenge the correctness of a ruling "admitting evidence of the defective and dangerous condition of a street within the corporate limits of the City of Jefferson," and showing that defendant exercised acts of control over the same. These assignments are based upon the assumption that the uncontradicted evidence established the fact that the scene of the accident and injury lay entirely within the cor-

porate limits of Jefferson. There is no controversy as to where the accident occurred, the record disclosing that it happened at the south end of the bridge, and it being the theory of plaintiff that it was caused by the concurrence of the facts that the bridge was not in line with the roadway, that there was a rut or depression in the road at the point where it joins the bridge, and that the "half-soling" of the bridge at that point was defective. The chief dispute arose as to whether the location of these alleged defects was within the corporate limits of the City of Jefferson. The county surveyor testified that he had made a survey of the northern boundary of the city, which showed such line to include 2 feet of the length of the bridge at the south end. Other witnesses, however, testified that the northern boundary of the city was a few feet south of the end of the bridge, and that all of the defects were in a public county road known as the Pacific Highway. While it may be true that the testimony of a civil engineer who has made a survey of the line should be accorded great weight, our attention has not been called to any law which makes such testimony conclusive, and after all, it was a question properly submitted to the jury.

3. Defendant next complains because the court admitted evidence of other accidents occurring at the same place. Such evidence was admitted over the objection of defendant, but in doing so, the trial court expressly limited its application to showing that the place was dangerous. There are a few jurisdictions in which such evidence is held to be incompetent for that purpose, but this court has definitely held that it is competent: *Galvin* v. *Brown*

*& McCabe,* 53 Or. 598 (101 Pac. 671); *Gynther* v. *Brown & McCabe,* 67 Or. 310 (134 Pac. 1186).

4. It also urged that it was error to admit evidence that the car was properly equipped with license tags of the current year, without first showing that a license had been issued by the Secretary of State. We find no merit in this connection. If the motor-vehicle law provided for the issue of some form of license other than the number-plates, which, so far as we have been able to discover, it does not, still the statute provides for such number-plates to be attached to the car as evidence that the law has been obeyed, and such evidence was properly admitted.

5. We come now to a consideration of the assignments of error based upon instructions which were either given or refused by the trial court. Among others, the following charge was given to the jury:

"There has been some evidence tending to show that repairs were made subsequent to the alleged injury herein upon the bridge in question. This evidence is not material to the question of the alleged existence of a defective or dangerous condition of the highway at the time of the alleged injury, but is pertinent only to the question of who had control thereof, and should be thus restricted by you."

Defendant argues that this instruction is erroneous for the reason that if, in fact, it was not a legal county road, but was within the jurisdiction of Jefferson, the circumstance of exercising control thereof would not render the county liable. This is true, and the paragraph of which complaint is made, does not advise the jury otherwise. It must be remembered that there is a sharp conflict as to whether or not the defects were within the corporate limits of the town, and the conduct of the county officers in

relation thereto is a circumstance which the jury might properly consider in determining the exact location of the spot where the accident occurred.

6. Defendant's requested instruction No. 4, which was refused, reads thus:

"I instruct you further, as a matter of law, that it was the duty of the deceased to travel on the right half of the road, street or bridge. If you find that the deceased was traveling or attempting to travel on the left half of the bridge, or was attempting to cross from the right half of the bridge to the left half of the bridge, then he was not lawfully traveling on the highway, and cannot recover anything. It is immaterial whether such crossing or attempting to cross to the left half of the bridge, if you find that he did so cross or attempt to cross, contributed to the injury or not. He was, under such circumstances, not traveling lawfully, and under the laws of this state the county is not liable if injury resulted."

We have examined the evidence carefully and have been unable to find any testimony in the record upon which to base such an instruction, and it was therefore properly refused: *Bowen* v. *Clarke,* 22 Or. 566 (30 Pac. 430, 29 Am. St. Rep. 625).

7. Defendant's requested instruction No. 5, which was refused, relates to that part of the motor-vehicle law requiring cars to be driven at a reasonable rate of speed, never exceeding 25 miles per hour. It was not error to refuse this instruction, since it is fully covered by an instruction which the court gave.

The same may be said regarding requested instructions Nos. 7 and 11, the refusal of which is assigned as error.

8. Upon the trial the defendant interposed seasonable motions for a judgment of nonsuit and for a directed verdict, the denial of which is assigned as error. All of the grounds upon which such motions

were based are involved in the assignments already discussed, except that it is further urged that there is a failure of proof to sustain the contention that plaintiff's intestate was lawfully traveling upon the highway at the time of the accident. In other words, it is contended that plaintiff has not shown that decedent had fully complied with the requirements of the motor-vehicle law. One of the statutory disputable presumptions is, that the law has been obeyed (Section 799, subd. 34, L. O. L.), and such presumption is evidence: Section 739, L. O. L.

The motions for a judgment of nonsuit and for a directed verdict were properly denied.

We find no substantial error in the record, and the judgment is affirmed.                          AFFIRMED.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.